CHUBB GROUP OF INSURANCE
COMPANIES, Plaintiff,

v.

H.A. TRANSPORTATION SYSTEMS,
INC., et al., Defendants.

No. CV 01–9192 AHM.

United States District Court,
C.D. California.

Oct. 9, 2002.

R Joseph Decker, Haleh Jenkins, Prindler Decker & Amaro, Long Beach, CA, for Plaintiff.

Charles M Farano, Jeffrey L Farano, Farano & Kieviet, Anaheim, CA, James Attridge, Shawn Mann & Neidermayer, San Francisco, CA, for Defendant.

## ORDER GRANTING DEFENDANT H.A.'S MOTION FOR SUMMARY JUDGMENT

MATZ, District Judge.

### INTRODUCTION

This action is before the Court on the motion of Defendant H.A. Transportation ("HA") for Summary Judgment. For the reasons stated below, Defendant's motion is GRANTED.

### FACTS

Unless *otherwise noted, the following facts are undisputed.*[1] This action arises from the theft of a truck and trailer in South Gate, California in June, 2000. Compl. at 2. That truck and trailer contained 1,200 cases of menthol cigarettes en route from Madrid, Spain to Benicia, California. The cigarettes were the property of Cigarettes Cheaper!,[2] which had contracted with HA in June, 2000 to transport

---

1. When the party moving for Summary Judgment meets its burden of demonstrating the absence of a genuine issue of material fact for trial, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or ... otherwise ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e). Plaintiff Chubb did not file a Statement of Genuine Issues (SGI) with its opposing papers as required by Local Rule 56–2. Rule 56–2 states that "[a]ny party who opposes [a Motion for Summary Judgment] shall serve and file ... a separate document containing a concise 'Statement of Genuine Issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." L.R. 56–2. Local Rule 56–3 provides that in determining any Motion for Summary Judgment, "the Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the [SGI] and (b) controverted by declaration or other written evidence filed in opposition to the motion." Although the Court has attempted to piece together Chubb's version of the facts from Chubb's Opposition and from its filed declarations, where the Court finds that HA has met its initial burden and where Chubb's version of events is either unclear or unsupported because of its failure to file an SGI, the Court will find that there is no genuine issue.

2. Plaintiff Chubb is an insurance company suing as a subrogee of Cigarettes Cheaper! to whom Plaintiff issued an insurance policy relating to the cargo in this suit.

the cigarettes for the inland leg of the shipment—from Carson, California to Benicia. Compl. at 2.

HA is a licensed property broker and acts as a middleman between shippers and prospective truckers. As such, HA did not transport the shipment itself. Declaration of Alan Huttman ¶ 3–4. Rather, HA contracted with Orozco Transportation, Inc. ("Orozco") to transport the cargo. Orozco, in turn, subcontracted the load to R & G Trucking ("R & G"). Compl. at 2. The cigarettes were stolen when the R & G driver parked the truck containing the shipment in a restaurant parking lot in South Gate, California. Compl. at 2.

On August 3, 2001, Chubb brought a suit for breach of contract, negligence, and violation of California Civil Codes §§ 2194 and 2195 in Los Angeles Superior Court against HA, Orozco, and R & G. Notice of Removal ("NOR") at 1. On October 25, 2001, Defendants timely removed to federal court based on federal question jurisdiction. NOR at 2.

On August 16, 2002, HA filed this Motion for Summary Judgment. HA noted that the Complaint identifies HA as a "common carrier" and that HA is in fact a "broker" and not a "common carrier." Because HA claims that the standards of liability for brokers differ from those that apply to common carriers, HA argues that it is not liable under any of the claims alleged in the Complaint. HA's Motion for Summary Judgment at 9–10. On August 28, 2002, Plaintiff filed a motion to amend its Complaint as to its allegations against HA to replace "common carrier" with "transportation broker" throughout and to allege "broker liability based on a negligent entrustment (hiring) theory." Plaintiff also sought to add allegations that all of the Defendants were agents of each other and that all engaged in conduct for which all are liable. The Court denied that motion on October 4, 2002.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides for Summary Judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When the moving party does not bear the burden of proof at trial, as is the case here, the moving party need not disprove the other party's case for the purposes of Summary Judgment, but rather must point out the absence of evidence proffered by the non-moving party. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as other-

wise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e). Summary Judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a Motion for Summary Judgment. *Id.; Beyene v. Coleman Sec. Serv., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a Motion for Summary Judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie,* 526 U.S. 541, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## B. Legal Framework: *Carriers vs. Brokers*

■■■ The Carmack Amendment (49 U.S.C. § 14706 (1996)) imposes liability on a carrier for all losses relating to goods it transports in interstate commerce.[3] The Plaintiff need not prove negligence. "A shipper establishes a prima facie case of a carrier's negligence under the Carmack Amendment by evincing proof by a preponderance of the evidence that the goods '1) were delivered to the carrier in good condition, 2) arrived in damaged condition, and 3) resulted in the specified amount of damage.'" *Fuente Cigar, Ltd. v. Roadway Express, Inc.,* 961 F.2d 1558, 1560 (11th Cir.1992) (quoting *Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc.,* 901 F.2d 1034, 1037 (11th Cir.1990); *Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013 (11th Cir.1987)). Once the Plaintiff establishes a prima facie case of negligence, the burden shifts to the defendant to show that it was free of negligence and that the damage was caused by one of the several excepted causes that relieve carriers of liability. *Independent Machinery, Inc. v. Kuehne & Nagel, Inc.,* 867 F.Supp. 752, 758 (N.D.Ill.1994).

■■■ The Carmack Amendment governs "motor carriers" and "freight forwarders." 49 U.S.C. §§ 14706(a) (1996). The statute absolutely preempts all state common law claims against such carriers and freight forwarders. *Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 613 (9th Cir.1992). However, the Carmack Amendment does not ap-

---

**3.** Technically, the Carmack Amendment applies to shipments over which the Surface Transportation Board (STB) (formerly the Interstate Commerce Commission; see 49 U.S.C. § 702 (1996)) has jurisdiction. *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.,* 799 F.2d 697, 699 (11th Cir.1986). Among other things, the STB has jurisdiction over "transportation ... between a place in ... the United States and a place in a foreign country to the extent the transportation is in the United States." 49 U.S.C. § 13501(1)(E). Plaintiff makes the mistaken assertion that the Carmack Amendment "may not apply" to the shipment in question because a separate bill of lading was issued for the intrastate inland portion of the shipment. Plaintiff's Opposition at 3–4. The Carmack Amendment applies to the inland leg of an overseas shipment regardless of whether the shipment is conducted under a single "through" bill of lading or under separate bills of lading. *Neptune Orient Lines. Ltd. v. Burlington Northern & Santa Fe Railway Co.,* 213 F.3d 1118, 1119 (9th Cir.2000). Moreover, the Carmack Amendment applies to the inland leg of a shipment even if that leg is fully intrastate. *Project Hope v. M/V IBN Sina, et. al.,* 250 F.3d 67, 70–71, 73 (2d Cir.2001).

ply to brokers.[4] *See, e.g. Professional Communications, Inc. v. Contract Freighters, Inc.,* 171 F.Supp.2d. 546, 551 (D.Md.2001); *Independent Machinery,* 867 F.Supp. at 761; *Adelman v. Hub City Los Angeles Terminal,* 856 F.Supp. 1544, 1547–48 (N.D.Ala.1994). Consequently, most courts hold that brokers may be held liable under state tort or contract law in connection with shipments. *Intercargo Ins. Co. v. Burlington Northern Santa Fe Railroad,* 185 F.Supp.2d. 1103, 1113–1115 (C.D.Ca.2001) (applying California law to party that was neither a carrier nor a freight forwarder); *Professional Communications,* 171 F.Supp.2d. at 551–52 (applying Florida and Maryland law of negligence to a motor carrier broker); *Independent Machinery,* 867 F.Supp. at 762 (applying state law to party that was neither a carrier nor a freight forwarder); *Adelman,* 856 F.Supp. at 1548–49 (same).[5]

## C. There is no genuine issue of fact as to Defendant's status as a broker in this transaction.

Because the legal standards that apply to carriers and brokers diverge, it is important to ascertain first whether HA was acting as a "carrier" or as a "broker" in this transaction. Both parties now agree that HA acted as a broker in the transaction in question. Although Chubb hints in its Opposition that it believes HA acted as a common carrier in this transaction ("Whether ... H.A. was an exclusive broker is debatable." Plaintiff's Opposition at

5), the Court construes HA's identity as a broker to no longer be at issue, given that Plaintiff-itself moved on August 28, 2002 to amend its Complaint based on "recent discovery" revealing that HA "acted as a broker in this case." Plaintiff's Motion to Amend Complaint at 2.

■ However, while Plaintiff Chubb concedes that HA did not act as a common carrier, Chubb argues that HA held itself out as a common carrier in the transaction at issue. Plaintiff's Opposition at 4–5. Chubb cites *Ensco, Inc. v. Weicker Transfer and Storage Co.,* 689 F.2d 921, 925 (10th Cir.1982), for the proposition that "[a] carrier's status as a common carrier is determined not by reference to its authority but rather by reference to what it holds itself out to be." Even if *Ensco*—which concerned the distinction between "contract carriers" and "common carriers"— applies here, Chubb has not alleged sufficient facts to show that there is a genuine issue for trial regarding this matter. Fed. R. Civ.P. 56(e).

Chubb points to only three facts to support its argument that HA held itself out as a common carrier. First, Chubb has filed excerpts of the deposition of HA's President, Alan Huttman, in which Huttman made the following statements: "We were to arrange for the transportation of the goods from ... Los Angeles to ... Benicia." Huttman deposition excerpt at 15, lines 22–24. "We[ ] meet the distinct needs of shippers as it relates to the move-

---

**4.** A "broker" is defined as "a person, other than a motor carrier ... that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

**5.** *But see, Commercial Union Ins. Co. v. Forward Air, Inc.,* 50 F.Supp.2d 255, 259 (S.D.N.Y.1999) (suggesting, in dicta, that there is a "strong argument" for applying

*federal common law* to claims against brokers). The court argues that applying federal common law in these cases would be consistent with the intention of the Carmack Amendment to create uniform national rules to govern liability for damage to goods by common carriers. "A remedy crafted under federal common law is much more likely to be nationally uniform than common law relying on the decisions of each individual state." *Id.*

ment of their goods from point A to point B in their specified amount of time in the time frame they require at the cost that they require." *Id.* at 36, lines 5–8.

These statements do not necessarily indicate that HA held itself out as a common carrier, nor that HA had represented to Plaintiff that it would transport the items itself. The definition of "broker" in Title 49 of the U.S.Code includes one who "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Mr. Huttman's statements do not necessarily show that HA was holding itself out as anything more than a broker.

Second, Chubb notes that a bill of lading identified HA as the "carrier" for the load. De Heras Decl., Exhibit 8. However, Chubb admits that the creator of that document was the customs house broker at the Port of Los Angeles, and not HA itself, Plaintiff's Opposition at 4, and Chubb has provided no evidence establishing that HA caused the customs house broker to place that entry on the bill of lading.

■ Finally, Chubb notes that the driver who transported the cigarettes identified himself as working for "HA" when he picked up the cargo in Carson, California. De Heras Decl., Exhibit 11. The driver was actually an employee of R & G, and not HA. Huttman Deposition at 36–37. This evidence does not necessarily show that HA held itself out as a carrier. Rather, at most it shows that an employee of R & G was holding himself out as being an employee of HA. Chubb has proffered no evidence to link actions of HA to the R & G driver's representation.[6]

For the foregoing reasons, the Court holds that Chubb has not alleged sufficient facts to show that there is a genuine issue as to the capacity in which HA was functioning. Fed. R. Civ.P. 56(e). Accordingly, the Court considers next whether HA is entitled to a judgment as a matter of law, given its status as a broker.

**D. Chubb's Causes of Action Against HA**

To survive Summary Judgment, Chubb must allege sufficient facts, supported by citations to evidence in the record, that are logically capable of supporting each claim. *Devereaux v. Abbey*, 263 F.3d 1070, 1077 (9th Cir.2001). With that principle in mind, the Court considers each cause of action in the order that it appears in the Complaint.

**1. Breach of Contract**

■ In the Complaint, Chubb states that it "contracted with H.A. to transport 1,200 cases of menthol cigarettes from Carson, California, to Benicia, California." Compl. at 2. Plaintiff further states that Chubb "performed all conditions, covenants and promises required to be performed in accordance with the terms and

---

6. Plaintiff also offered print-outs from HA's website as evidence that HA held itself out as a carrier. De Heras Decl. in Opposition to HA's Motion for Summary Judgment, Exhibit 12. The print-outs appear to depict the website as it appeared on July 30, 2002. *Id.* Plaintiff has offered no evidence to establish that the 2002 version of the website contains the same representations as the June, 2000 version that presumably was available to the public at the time of the transaction and ultimate loss. Moreover, the President of HA

Alan Huttman testified that the 2002 version differed from the version that was available in 2000. Attridge Decl., Exhibit E. Therefore, because the print-outs do not demonstrate what representations HA may have made at the time of the transaction and loss, the Court views that evidence as irrelevant and will not consider it. Fed. R. Civ.P. 56(e); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988) (only admissible evidence may be considered on a Motion for Summary Judgment).

conditions of the written contract," and by virtue of the theft, 751 cases of [cigarettes] were never delivered to Benicia, California, in violation of Defendants' obligations and duties pursuant to the various written contracts. *Id.* at 2–3.

Plaintiff has not pursued its breach of contract claim. It never filed as exhibits nor alluded in its papers to the context and content of the supposed contract(s) between HA and Plaintiff. Plaintiff has provided no information on what, exactly, each party's obligations were under the contract. The only document proffered that refers to the "contract" is an excerpt from the Huttman deposition Plaintiff submitted. In that excerpt, Huttman explained that after the HA sales representative and Plaintiff's subrogor had agreed on a price, HA produced a document that "would be more of a rate confirmation document than a contract per se." Huttman deposition at 17, lines 4–5. Plaintiff has not tendered that "rate confirmation document" and never sought to explain how any document that Cigarettes Cheaper! and HA may have adopted gave rise to particular commitments from either party. Therefore, Chubb has failed to proffer sufficient evidence in support of its breach of contract claim. Accordingly, Defendant's Motion for Summary Judgment on this claim is GRANTED.

### 2. Negligence

▮▮▮ Under California law, an action in negligence requires a showing that (a) Defendant owed the Plaintiff a legal duty, (b) Defendant breached that duty, and (c) the breach was a proximate or legal cause of the injuries Plaintiff suffered. *Ann M. v. Pacific Plaza Shopping Center,* 6 Cal.4th 666, 673, 25 Cal.Rptr.2d 137, 863 P.2d 207 (1993).

▮▮▮ Whether a duty of care exists is a question of law for the Court. *Paz v. California,* 22 Cal.4th 550, 557, 93 Cal. Rptr.2d 703, 994 P.2d 975 (2000) (en banc). It appears that both parties agree that the duty of care applicable to a broker such as HA is to exercise due care in selecting an appropriate carrier. *See* Plaintiff's Opposition at 6 ("a broker can be held liable for negligently undertaking the hiring of a carrier"); Defendant's Memorandum of Points and Authorities at 12 ("a broker could be liable . . . only . . . for negligently . . . hiring a carrier"). Although there appears to be no California law that directly applies, courts in other jurisdictions have also taken that position. *See, Professional Communications, Inc. v. Contract Freighters, Inc.,* 171 F.Supp.2d 546, 552 (D.Md.2001); *Adelman v. Hub City Los Angeles Terminal, Inc.,* 856 F.Supp. 1544, 1548 (N.D.Ala.1994).

In the Complaint, Plaintiff alleges that HA "fail[ed] to properly secure, control, protect and care for the . . . shipment while transporting [it] from Carson, California, to Benecia, California." Compl. at 3. Plaintiff also alleges that HA had a duty to "provide reasonable security" while Plaintiff's cargo was stored in the possession of the carriers HA had hired. *Id.* Because these duties relate to events that occurred after the carrier had been hired and during the course of the shipment itself, as opposed to HA's activities in selecting the carrier, the duties alleged in the Complaint are not applicable to HA. Therefore, HA's Summary Judgment motion as it applies to the second cause of action as alleged in the Complaint is GRANTED.

▮▮▮ Plaintiffs now contend that the "primary issue in this case is H.A.'s negligence in hiring a carrier that had inadequate insurance to cover the cargo loss."[7]

---

**7.** In connection with this "primary issue," Plaintiff requested a Rule 56(f) continuance to collect additional facts. In particular, Plain-

tiff specified that it would obtain the information it required from a deposition of Orozco

Plaintiff's Opposition at 7. Considering that only in opposing Summary Judgment did Plaintiff raise this issue, it is unclear why it is the "primary issue" in this case. Nevertheless, the Court now considers whether HA has a legal duty to hire a carrier with adequate insurance.

Plaintiff cites no caselaw establishing or recognizing a duty on the part of a broker to ensure that its carrier has adequate insurance to cover potential losses or damage to the cargo. Moreover, this Court has been unable to locate any cases that are directly on point. For example, in *Government of the U.K. v. Northstar Services, Ltd,* the Court analyzed a broker's duty relating to its carrier's insurance coverage, but that duty arose from contract obligations, not tort. 1 F.Supp.2d 521, 527 (D.Md.1998).

Moreover, where the shipper—Cigarettes Cheaper! in this case—is fully insured for the loss or theft of its cargo, it would appear to be most dubious for the law to impose a duty on its broker to ensure that the carrier has insurance to cover the same loss. Presumably, such a carrier would be more expensive. Here, Plaintiff Chubb is the shipper's insurance company. Chubb has already compensated Cigarettes Cheaper! for the loss of its shipment and now is suing as a subrogee. It seems unlikely that Cigarettes Cheaper! would have chosen to pay more for the shipment so that its insurance company would be compensated in the event of loss. In fact, the President of HA testified that HA offers an additional service whereby it buys insurance on behalf of a customer "if that customer is not in a position to get their (sic) own insurance." Huttman Deposition at 34–35. Presumably, Cigarettes Cheaper! never requested that service. It would be anomalous, therefore, to hold that HA had a duty to insure Cigarettes Cheaper!'s shipment anyway. *Cf. Read–Rite Corp. v. Burlington Air Express, Ltd.,* 186 F.3d 1190, 1198 (9th Cir.1999) (holding that a shipper who self-insures is not disadvantaged when it is denied the opportunity to "opt out" of an air carrier's limited liability provision by paying the carrier more money for redundant coverage).[8]

Therefore, the Court holds that because Chubb failed to establish that HA had a duty to ensure that the carrier it selected was insured against the same loss for which Cigarettes Cheaper! was itself insured, the Court GRANTS HA's Summary Judgment motion as to Chubb's negligence claims.

### 3. California Civil Code §§ 2194 and 2195

Plaintiff alleges that the loss of the shipment caused HA to be liable under §§ 2194 and 2195 of the California Civil Code. Section 2194 governs a common carrier's liability for loss [9] and section 2195

---

that was scheduled for September 11, 2002. Plaintiff had been unable to take Orozco's deposition at an earlier date because Orozco's counsel had requested three continuances. Plaintiff's Opposition exhibits 2–5. However, the Court notes that Plaintiff's *first* noticed deposition of Orozco was scheduled for July 17, 2002—two days after the non-expert discovery cut-off date in the Scheduling and Case Management Order. Plaintiff's Opposition, Exhibit 2. Moreover, after filing its request, Plaintiff filed a later declaration based on the very information it sought to obtain and by then had obtained at the Orozco deposition.

8. Plaintiff's reliance on the *Farr Man* case is unavailing. In that case, the Court held only that an insurer suing as a subrogee may not recover against its insured. *Farr Man & Co., Inc., et. al. v. M/V/ Rozita, et. al.,* 903 F.2d 871, 877–879 (1st Cir.1990). The case does not address whether a third party arranging a shipment for the insured has a duty to ensure that the carrier the third party chooses is also insured against the same loss.

9. Section 2194 reads: "Unless the consignor accompanies the freight and retains exclusive control thereof, an inland common carrier of property is liable, from the time that he ac-

governs a common carrier's liability ·for negligence.[10]

■■■■ However, because HA is not a "common carrier" under the California definition of that term, these sections may not form the basis of a claim against HA. Under California law, "one who offers to the public to carry ... property ... is a common carrier of whatever he thus offers to carry." CA Civ.Code § 2168. California courts interpret that definition to include only those who are "bound to accept anyone who tenders the price of carriage." *Webster v. Ebright,* 3 Cal.App.4th 784, 787, 4 Cal.Rptr.2d 714 (1992) (citing *Samuelson v. Public Utilities Com.,* 36 Cal.2d 722, 729, 227 P.2d 256 (1951)). Chubb has proffered no evidence to suggest that HA, which merely "acts as an intermediary between shippers and carriers," was obliged to serve all customers who offered to pay. Accordingly, sections 2194 and 2195 do not apply and Defendant HA's Motion for Summary Judgment as to Plaintiff's third cause of action (Compl. at 4) is GRANTED.

## CONCLUSION

For the reasons stated herein, HA's Motion for Summary Judgment[11] is GRANTED. HA shall file a proposed judgment within seven calendar days of the date of this order.

IT IS SO ORDERED.

cepts until he relieves himself from liability ... for the loss or injury." CA Civ.Code § 2194 (1985).

10. Section 2195 reads: "A common carrier is liable ... if his want of ordinary care exposes the property to the cause of the loss." CA Civ.Code § 2195 (1985).

11. Docket number 20.