**ATLANTIC MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**YASUTOMI WAREHOUSING AND DISTRIBUTION, INC., Defendant.**

**No. CV02–9355LGB SHSX.**

United States District Court, C.D. California.

July 8, 2004.

Stephen C Bass, Russell Mirkovich & Morrow, Long Beach, CA, for Atlantic Mutual Insurance Company, Plaintiff.

James P Moher, Bullivant Houser Bailey, San Francisco, CA, for Yasutomi Warehousing and Distribution Inc, a corporation, in personam, Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BAIRD, District Judge.

## I. INTRODUCTION

Plaintiff Atlantic Mutual Insurance Company ("Atlantic") filed suit against Defendant Yasumtomi Warehousing and Distribution, Inc. ("Yasumtomi") seeking reimbursement from Yasumtomi for a payment Atlantic made to its insured, Unirex Corporation ("Unirex"), after Unirex's shipping container was stolen. Yasumtomi has filed the instant partial summary judgment motion against Atlantic seeking a finding that Atlantic's damages are limited to $0.50 per pound pursuant to the terms of its bill of lading and that the Carmack Amendment preempts Atlantic's state law claims.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

Defendant Yasutomi Warehousing and Distribution transported cargo for Unirex Corporation from approximately 1999 to 2002. Oda Decl. ¶ 4. For every transaction with Unirex, Defendant used an identical bill of lading which limited its liability, stating: "Unless indicated the released value is agreed to be $50.00 per shipment or 50 cents per L.B. Excess valuation charges will be 10 cents per $100.00 valuation." Oda Decl. ¶ 9. Between May 26,

2000 and April 6, 2001, Defendant delivered approximately 101 containers along with 101 identical bills of lading. Oda Decl. ¶ 10. From 1999 to 2002, Unirex never declared a value other than the stated released value, indicated on Defendant's bill of lading. *Id.*

On April 3, 2001, Defendant received an order to retrieve and deliver five shipping containers from the Port of Long Beach to Unirex's facility in Vernon, California. Oda Decl. ¶ 5. The containers originated from Hong Kong. *Id.;* Oda Decl., Exhibit 1. Defendant delivered four of the five containers on April 5 and 6, 2001, all without incident and with the same bills of lading. Oda Decl. ¶ 6. Defendant could not deliver the fifth and final container until approximately 5:00 p.m. on April 6, 2001, because of delays. Oda Decl. ¶ 7. Unirex did not want to pay its workers overtime, so it instructed Defendant to hold the container in Defendant's facility over the weekend and deliver it to Unirex on Monday, April 9, 2001. Oda Decl. ¶ 7. The container, the chassis on which it was mounted, and a tractor were stolen from Defendant's facility sometime between the evening of Friday, April 6, 2001 and the morning of Monday, April 9, 2001. Oda Decl. ¶ 8. Defendant's fifth and final bill of lading was misplaced and not delivered to Unirex. Oda Decl. ¶ 9. Plaintiff became subrogated to the instant matter after making a payment to Unirex, its insured. Compl. ¶ 7.

### B. *Procedural History*

Plaintiff Atlantic Mutual filed its complaint on December 10, 2002, alleging claims for damage to cargo, negligence, breach of contract, breach of duty to care for property in bailment, breach of warranty and declaratory relief. Defendant filed its answer on May 29, 2003, denying the allegations of the complaint and raising various affirmative defenses. On May 26, 2004, Defendant filed this Motion for Partial Summary Judgment. Atlantic has failed to oppose Yasumtomi's motion for partial summary judgment.[1]

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of informing the district court of the basis of the summary judgment motion and of demonstrating the absence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Katz v. Children's*

---

1. On June 15, 2004, this Court issued a Minute Order which provides, in relevant part: Pursuant to this Court's Standing Order ... Plaintiff's opposition to Defendant's motion for partial summary judgment was due on June 7, 2004.... Failure to file an opposition by Thursday, June 17, 2004 at 5 p.m. will be considered non-opposition to the motion and may result in the Court granting Defendant's Motion for Partial Summary Judgment. June 15, 2004 Minute Order. Atlantic did not file an opposition by June 17, 2004.

*Hosp. of Orange County,* 28 F.3d 1520, 1534 (9th Cir.1994). On an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

Once this initial burden is satisfied, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1544 (9th Cir.1988). Where the standard of proof at trial is preponderance of the evidence, the non-moving party's evidence must be such that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

The court views all facts and draws all inferences therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176(1962). The Court must accept the plaintiff's view of all material disputed facts. *LaLonde v. County of Riverside,* 204 F.3d 947, 954 (2000). If, however, the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## IV. ANALYSIS

 The fact that no opposition is filed does not excuse the moving party from meeting its burden for summary judgment. *See* Federal Rule of Civil Procedure 56(e); *Anchorage Assocs. v. Virgin Islands Board of Tax Review,* 922 F.2d 168, 175 (3rd Cir.1990).

 Under the Carmack Amendment, 49 U.S.C. § 14706(a), a motor carrier is liable for the actual loss or injury to property it carries in interstate commerce unless otherwise agreed with the shipper. *See, e.g., Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 613 (9th Cir.1992). The Carmack Amendment also applies to the inland leg of an overseas shipment, even if that leg is entirely intrastate. *Chubb Group of Insurance Cos. v. H.A. Transp., Sys., Inc.,* 243 F.Supp.2d 1064, 1068 n. 3 (C.D.Cal.2002). The Carmack Amendment absolutely preempts all state common law claims against carriers. *Id.* at 1068.

 A motor carrier may limit its liability by entering into a contract with the shipper, agreeing to limit the carrier's liability. 49 U.S.C. § 14101(b)(1). In order to limit its liability, a carrier must: (1) obtain an agreement with the shipper based on a choice of liability; (2) give the shipper a reasonable opportunity to choose between levels of liability; and (3) issue a bill of lading prior to shipment.[2] *Consolidated Freightways Corp.,* 2003 WL 22159468 at *3; 3 Sorkin, *Goods In Transit,* § 13.04, pp. 13–72 to 13–72.1 (2004). A bill of lading containing the requisite language will constitute prima facie evidence that the shipper was offered a choice of rates. *Goods In Transit,* § 13.04[3], pp. 13–93 to 13–94. Failure to issue a bill of lading does not affect the liability of a carrier. 49 U.S.C. § 14706(a)(1). As long

---

**2.** The ICC Termination Act abolished an additional element requiring carriers to maintain an approved tariff. *See Consolidated Freight-* *ways Corp. v. Travelers Ins. Co.,* No. 00–CV–20726, 2003 WL 22159468 at *3 (N.D.Cal. March 28, 2003).

as there is a "course of dealing," courts have only required that the bill of lading clearly state the [monetary] limitation and the method for avoiding it. *Royal Insurance Co. v. Sea–Land Service Incorporated*, 50 F.3d 723, 728 (9th Cir.1995).

In *Insurance Co. of North America v. NNR Aircargo Service, Inc.*, insurer Insurance Company of North America ("INA"), acting on behalf of its insured, Dunlop Slazenger Corporation ("Dunlop"), sued carrier NNR Aircargo Service ("NNR") to recover for the loss of $257,285.34 in stolen golf balls. *Insurance Co. of North America v. NNR Aircargo Service, Inc.*, 201 F.3d 1111, 1112 (9th Cir.2000). Two weeks after the golf balls were stolen, NNR sent an invoice to Dunlop that was identical in its terms and conditions to the previous forty-seven transactions between NNR and Dunlop. *Id.* The Ninth Circuit ruled that the invoice terms and conditions could supplement shipping agreements if there was a sufficient "course of dealing." *Id.* at 1113. The Court defined "course of dealing" as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." *Id.* (citing Cal. Com.Code § 1205(1) (1964)). Considering that NNR and Dunlop used the identical invoice for the past forty-seven transactions, the Court ruled that NNR and Dunlop had developed a sufficient course of dealing to supplement its shipping agreements. *Id.* at 1114. Furthermore, the Court ruled that such a course of dealing should have put Dunlop on notice of the terms and conditions contained in the invoice, thus holding Dunlop and INA to the limited liability listed on NNR's invoice. *Id.* at 1116.

In *Chubb Group of Ins. Co. v. H.A. Trans. Sys., Inc.*, insurer Chubb Group of Insurance Companies ("Chubb"), acting as a subrogee of Cigarettes Cheaper!, sued the property broker, H.A. Transportation Systems, Inc. ("HA"), after a truck and trailer containing 1,200 cases of cigarettes from Spain were stolen. *Chubb Group of Ins. Co. v. H.A. Trans. Sys., Inc.*, 243 F.Supp.2d 1064, 1066–1067 (C.D.Cal.2002). HA was acting as the property broker for carriers Orozco Transportation, Inc. ("Orozco") and R & G Trucking ("R & G"). *Id.* at 1067. Orozco subcontracted the load to R & G, and the cigarettes were stolen in a parking lot in South Gate, California while in route to Carson, California. *Id.* The Ninth Circuit ruled that the Carmack Amendment applies to "an inland leg of an overseas shipment regardless of whether the shipment is conducted under a single 'through' bill of lading or under separate bills of lading." *Id.* at 1068 n. 3. Finally, the Court ruled that the Carmack Amendment preempts all state common law claims against such carriers. *Id.*

Defendant Yasutomi's liability is limited under the Carmack Amendment. The shipment of goods originated in Hong Kong, and docked in Long Beach, California, before being delivered to Unirex. Defendant is a motor carrier within the definition of the Carmack Amendment. The fact that Defendant's fifth and final bill of lading was "misplaced" is not fatal to Defendant's motion for partial summary judgment. Defendant had 101 transactions with Unirex in the past year, using the exact same bill of lading for each transaction. Additionally, Defendant and Unirex conducted numerous transactions over a three-year period, from 1999 to 2003, using the same bill of lading. Before Unirex's container was stolen, Defendant successfully transported four of the five containers to Unirex, accompanied by the identi-

cal bill of lading. Similar to *Insurance Co. of North America v. NNR Aircargo Service, Inc.*, Defendant Yasutomi and Unirex possessed a sufficient and significant "course of dealing." Because of this course of dealing, Plaintiff cannot claim that Unirex was without notice of the terms and conditions of the bill of lading. The Ninth Circuit has held that "actual possession of the bill of lading with the [liability] limit is not required before a party with an economic interest in the shipped goods can be held to the limitation." *Royal Insurance Co. v. Sea–Land Service, Inc.*, 50 F.3d 723, 727 (9th Cir. 1995). Defendant and Unirex's course of dealing created sufficient notice that Defendant's liability would be limited in the event of theft or damage.

The fact that Unirex purchased insurance on its cargo demonstrates that it had notice about the limited liability contained in Defendant's bill of lading. A party such as Unirex had an opportunity to make an informed choice between shipping with Defendant's limited liability or by purchasing separate insurance, which Unirex did through Atlantic Mutual. The Ninth Circuit ruled that "the function served by notice of limited liability is accomplished if the shipper in fact purchases separate insurance, whether or not such notice is actually given." *Read–Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1198 (9th Cir.1999). Unirex's purchase of insurance through Plaintiff makes it clear that Defendant's limited liability contained in its usual bill of lading is valid and enforceable.

■ The Carmack Amendment applies to the instant case, preempting all of Plaintiff's state law claims of negligence, breach of contract, breach of duty to care, breach of warranty, and declaratory relief. The cargo originated from Hong Kong, and was intended for Unirex's facility in Ver-

non, California. Even though the goods were stolen while "in transit" from Defendant's facility in Long Beach, California, the Carmack Amendment applies. Just like *Chubb*, the cargo was stolen during an "inland leg of an overseas shipment," even if it was entirely intrastate. Applying the Carmack Amendment, Plaintiff's state law claims are all preempted. Additionally, pursuant to the bill of lading, Atlantic's damages are limited to $0.50 per pound of the lost goods. Therefore, Defendant's motion for partial summary judgment is granted.

## V. CONCLUSION

Defendant's *Motion for Partial Summary Judgment* is hereby **GRANTED**.

**IT IS SO ORDERED.**